UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| NELSON R. AYBAR, | ) | CASE NO. 4:08 CV 407 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| ROSANN RUBOSKY, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff Nelson R. Aybar filed this Petition for a Writ of Mandamus against Northeastern Ohio Correctional Center ("NEOCC") Unit Management Chief Rosann Rubosky, NEOCC Unit "B" Manager C. Delgado, and Unit "B" Counselor Nicole Teasley. In the petition, Mr. Aybar claims that the defendants will not permit him to store all of his legal documents in his cell. He contends he is entitled to keep these documents with him and asks the court to order the defendants to comply with his demand.

## Background

Mr. Aybar is an inmate at NEOCC, having been convicted of narcotics conspiracy charges in the Southern District of New York in 2003. He apparently has a significant amount of paper stored in his cell, which he alleges he requires to litigate four pending cases and several cases

he may file in the future. He is currently engaged in a dispute with his unit staff over the number of legal document he can retain in his actual possession.

Mr. Aybar states that "this regrettable situation" began in September 2007. His Unit Counselor, Ms. Teasley, ordered Mr. Aybar to reduce the amount of paperwork in his cell. He refused. Two days later Ms. Teasley again confronted Mr. Aybar and ordered him to mail his legal materials out of the institution. He claims she behaved in an unprofessional manner. He refused to comply with the order stating that he has a constitutional right to keep all of his legal papers with him in his cell. Ms. Teasley took Mr. Aybar to the Unit Manager's office and made the same demand. Mr. Aybar once again refused to comply. He apparently permitted the officers to inspect the paperwork to assure that it was related to legal work. Shortly thereafter he changed his mind and sent an Inmate Request to Staff Member form to Ms. Teasley stating that "conversations concerning my legal materials are over. I am asking you for the immediate return of all my legal material in your actual possession." (Pet. Ex. A.) He did not get the desired response and the next day sent another Inmate Request to Staff Member form to Ms. Teasley. This time, Mr. Aybar stated, "since you have no business with my legal papers, what I am asking for is the immediate return of all my legal material located at your office." (Pet. Ex. B.) Again, he did not get the desired response and sent a third form to Ms. Teasley declaring "You do not have a slight authority to see or read my legal documents. I am demanding the immediate return of all my legal material in your actual possession." (Pet. Ex. C.)

On October 10, 2007, the debate continued. Ms. Teasley and Ms. Rubosky came to Mr. Aybar's cell and again stated to him that he would have to mail some of his legal materials out of the institution. Mr. Aybar "invited [Ms.] Rubosky to confiscate his legal materials and also

stated to her that 'she has the obligation to talk to him in a respectful manner.'" (Pet. at 3.)

The final altercation took place on November 2, 2007. Ms. Teasley and Ms. Rubosky both came to plaintiff's cell and ordered him to store his legal materials in the "gray box."[1] He states, "Amazing, Plaintiff is not a wizard to create out of nothing a gray box because he does not have such gray box." (Pet. at 3.) He contends that "when [Ms.] Rubosky found out the consistent of her inconsistent [sic] she changed for [sic] talking to barking and Plaintiff refused to hear her no more [sic]." (Pet. at 3.) He emphasizes that "he has the right to expect that as [a] human being he will be treated respectfully, impartially and fairly by all prison personnel." (Pet. at 3, note 2.) He calls Ms. Rubosky "culturally inferior, ignorant of the Rule[s] of Professional Conduct, arrogant in her interaction with the inmate population and, worst of all, an 'icon of irrationality.'" (Pet. at 3, note 3.) Upon his refusal "to hear" Ms. Rubosky, he was charged with disobeying a direct order and was taken to segregation.

Plaintiff claims it is of paramount importance for him to retain total control over his legal materials and he contends that he is legally entitled to do so without restriction. He states that he has "4-pending litigations in federal courts and his legal research concerning his future status as a legal resident in this country," and requires his legal materials to be available to him at all times. (Pet. at 2-3.) He asserts that the defendants are denying him access to the courts. He asks this court to order the defendants to comply with his demands.

## Analysis

---

[1] A "gray box" is the container in which prisoners are required to place legal materials for storage in their cells.

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

The district court is provided with mandamus jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States to perform a duty owed to the petitioner. To obtain relief under § 1361, petitioner must establish that he has a clear right to relief and that a federal employee has a clear, nondiscretionary duty to act. See Heckler v. Ringer, 466 U.S. 602, 616-17 (1984); In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir.1995); Ryon v. O'Neill, 894 F.2d 199, 205 (6th Cir.1990). Here, no violation of Mr. Aybar's constitutional rights has occurred and he is not entitled to the relief he requests.

It is true that prison officials may not interfere with a prisoner's First Amendment right of access to the courts. To state a claim for denial of access to the courts, however, Mr. Aybar must demonstrate that he suffered actual injury as a result of the defendants' conduct. Lewis v.

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

Casey, 518 U.S. 343, 351 (1996). Furthermore, the injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific, non-frivolous direct appeal, habeas corpus application, or civil rights action. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration." Id. at 355.

Mr. Aybar has not suffered an actual injury as a result of the defendants' actions. In support of the claim, he states that he has four pending litigation cases for which he requires his legal materials: United States v. Aybar, Case No. 1:92 cr 718-3 (S.D.N.Y. Not. of App. filed Dec. 21, 2006)(which is his criminal conviction); Aybar v. United States, Case No. 1:07 CV 7141 (S.D.N.Y. filed Aug. 10, 2007)(§2255); Aybar v. Bush, Case No. 1:07 CV 1243 (D.D.C. filed 2007)(challenging the constitutionality of the drug conspiracy statute as it was applied to him); Aybar v. Aybar, Case No. F1650391 (N.Y. family court case); and In Re Nelson R. Aybar , (a "writ of mandamus to compels [sic] the Circuit Clerk to comply with her ministerials [sic] and mandatories [sic] duties.") He also claims he wishes to pursue two additional Motions attacking his conviction, a request to the United States Sentencing Commission showing the number of illegal criminal aliens who were in supervised released release from 1987 to 2006, and a selective prosecution claim to avoid deportation.

Although Mr. Aybar claims that he requires control over the legal documents pertaining to his criminal conviction, United States v. Aybar, Case No. 1:92 cr 718-3 (S.D.N.Y. complaint filed Aug. 7, 1992), due to a "Notice of Appeal filed on Dec. 21, 2006," no such appeal

is pending. Mr. Aybar was convicted and was sentenced on November 20, 1995 in the United States District Court for the Southern District of New York. He filed a Notice of Appeal from the judgment of conviction three days after his sentencing. The judgment was affirmed by the United States Second Circuit Court of Appeals on June 20, 1996. Thereafter, he filed a Motion to Vacate his Sentence pursuant to 28 U.S.C. § 2255. See Aybar v. United States, Case No. 1:98 CV 6394 (S.D. N.Y. filed Sept. 10, 1998). The Motion was denied on May 30, 2002. He filed a Motion for Reconsideration of the §2255 petition pursuant to Federal Civil Rule 59(e). It was denied. Mr. Aybar filed a Motion for Relief from Judgment under Federal Rule 60(b). That Motion was also denied. Mr. Aybar appealed the denial of the § 2255 petition to the Second Circuit on January 17, 2003. The District Court's judgment was affirmed on July 2003. Undeterred, Mr. Aybar filed a Motion to Reverse Conviction and Sentence pursuant to Federal Civil Rule 12(b)(3) claiming the court lacked subject matter jurisdiction over his criminal trial. He also filed five Motions for Leave to File Supplemental § 2255 Petitions. All pending Motions were denied on December 15, 2006. The next docket entry is a second Motion to Vacate Judgment under 28 U.S.C. § 2255 filed on August 21, 2007. No appeal was filed on or near December 21, 2006. There is no suggestion that the defendants denied Mr. Aybar access to the courts. In fact, Mr. Aybar's filings in that case have been so prolific that the district court in New York directed the Clerk of Court to accept no further submissions under that docket number.

Mr. Aybar also claims he needs to retain physical possession of his legal papers to litigate Aybar v. United States, Case No. 1:07 CV 7141 (S.D.N.Y. filed Aug. 21, 2007). This is the second Motion to Vacate Judgment under 28 U.S.C. § 2255. The case was transferred to the Second Circuit as a second or successive petition on the date it was filed in the District Court. On

August 28, 2007, Mr. Aybar filed a Motion for Reconsideration of the transfer. The Motion was denied by the District Court on September 25, 2007. He appealed the denial of that motion on September 26, 2007. The Second Circuit issued its Mandate on February 20, 2008 stating that Mr. Aybar had not filed an application seeking authorization to file a second or successive habeas petition and therefore his petition was dismissed. All pending matters associated with the petition were deemed moot. Case No. 1:07 CV 7141 (S.D.N.Y. filed Aug. 10, 2007) is closed. There is no reasonable indication that the defendants' actions denied Mr. Aybar access to the courts in this case.

The third case for which Mr. Aybar claims he requires immediate possession of his legal materials is Aybar v. Bush, Case No. 1:07 CV 1243 (D.D.C. filed 2007) which was filed in the United States District Court for the District of Columbia. Mr. Aybar challenged the drug statute under which he was convicted as unconstitutional as it was applied to him. The United States District Court for the District of Columbia determined that Mr. Aybar was attacking his conviction which could only be done through a § 2255 action. The court ordered the case to be transferred to the Southern District of New York on July 11, 2007. Mr. Aybar filed a Motion for Reconsideration of the transfer on July 23, 2007. In the Motion he acknowledged that if the case were transferred and construed as a § 2255 Motion, it would be deemed to be successive. The Court did not immediately issue a response.

Mr. Aybar then filed a Petition for a Writ of Mandamus "in order to compel inferior court to render a decision in Aybar v. Bush." This would be the fourth case, In Re Nelson R. Aybar, Case No. 08-5057, for which Mr. Aybar contends he requires immediate access to legal documents in his cell. The District Court issued its response to Mr. Aybar's Motion for

Reconsideration on March 8, 2008, denying it. On May 7, 2008, the Circuit Court denied the Petition for a Writ of Mandamus as moot. There is no suggestion in either Aybar v. Bush or In re Nelson R. Aybar that the defendants' actions in any way prevented Mr. Aybar from pursuing a non-frivolous claim or caused the dismissal of on of these actions.

Mr. Aybar then indicates he requires immediate possession of his legal documents to litigate Aybar v. Aybar, domestic relations matter in the New York family court. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific, non-frivolous direct appeal, habeas corpus application, or civil rights action. Id.; Hadix, 182 F.3d at 405. The First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355. Mr. Aybar's domestic relations case cannot support his claim for denial of access to the courts.

Finally, Mr. Aybar fails to set forth any facts which suggest that the defendants violated his First Amendment rights with respect to any future cases he may pursue. He lists several suggestions of Motions he would like to file. Three of these Motions would be attacks upon his conviction. The other listings are vague descriptions of actions he may pursue. There is no indication that these defendants are preventing Mr. Aybar from filing specific, non-frivolous direct appeals, habeas corpus petitions, or civil rights actions. Without a showing of this type of actual injury, Mr. Aybar's First Amendment for denial of Access to the Courts must be dismissed.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith**.**

IT IS SO ORDERED.

S/Peter C. Economus - 6/2/08
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE